UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

DALTON BENN,

                Plaintiff,

-against-

THE CITY OF NEW YORK, NEW YORK
CITY DEPARTMENT OF EDUCATION,
STEPHEN RUSZCZYK and DOES 1-10,

                Defendants.
----------------------------------------------------------X

**MEMORANDUM & ORDER**

**07-CV-326 (NGG) (JMA)**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 0 4 2011 ★

BROOKLYN OFFICE

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Dalton Benn ("Benn") asserts claims of employment discrimination on the basis of race, national origin, and age under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; 42 U.S.C. §1981; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634; New York City Human Rights law, Administrative Code of the City of New York; and New York State Executive Law against his former employer, Defendants The City of New York, New York City Department of Education ("DOE"), and Stephen Ruszczyk and Does 1-10 (collectively, "Defendants") (Compl. (Docket #1).) Plaintiff alleges that he suffered unlawful termination, retaliation, and a hostile work environment as a result of Defendants' discrimination. (Compl.) Defendants have moved for summary judgment on all claims under Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendants' motion is granted in its entirety.

1

## I. BACKGROUND

### A. The Teaching Fellow Program

Plaintiff, an African American male of West Indian descent, was hired as a Teaching Fellow by DOE, on or about June 4, 2006. ("Pl. 56.1 Stmt." and "Pl. 56.1 Counterstatement" (Docket Entry # 43) ¶ 1.) Plaintiff was forty-nine years old at the time of his employment. (Pl. 56.1 Counterstatement ¶ 2.) The Teaching Fellow Program ("TFP") is a program that hires individuals who have worked in other professions as teachers in subject areas where there is a shortage of teachers. ("Def. 56.1 Stmt.") (Docket Entry # 41) ¶ 2.)[1] Teaching Fellows entering the program attend "pre-service training" in the summer and co-teach students under the supervision of teachers certified by the TFP. (Id. ¶ 5.) Contemporaneously with the "pre-service training," new Teaching Fellows pursue their master's degree, subsidized by DOE. (Id.) Teaching Fellows enter a "fast track" for teaching positions with the DOE and can be hired before obtaining a master's degree. (Id.)

On March 28, 2006, as a condition of enrollment into the fellows program, Plaintiff signed a "Fellow Commitment Form," which set out the duties and responsibilities of all participating Fellows. (Id. ¶ 7.) This form stated that "in order to remain a Teaching Fellow with the corresponding benefits of the Fellowship" Plaintiff "must maintain good standing in the following areas:

- As a participant in pre-service training, through successful completion . . .
- As an employee of the New York City Department of Education
- As a student . . .
- As a Fellow, by passing all necessary teacher certification exams in my certification area (LAS and CST) before the beginning of the 2006-2007 school year.
- As a Fellow, by maintaining professional conduct becoming of a student and a teacher.

---

[1] Unless otherwise noted that a fact is in dispute, where the court cites Defendant's Rule 56.1 Statement alone, Plaintiff has admitted this statement in his Rule 56.1 Statement.

2

(Id. ¶ 7.)

Defendant Sephen Ruszczyk ("Ruszczyk") was Field Fellow Advisor ("FFA") who supervised sixteen Teaching Fellows, including Plaintiff, in order to insure that the new Teaching Fellows were progressing in their training and complying with program guidelines. (Id. ¶ 10, 11.) In this role, Ruszczyk supervised six African Americans, including Plaintiff. (Id. ¶ 13.) Plaintiff was assigned to two cooperating teachers during his time in the program. (Plaintiff's Aff./Decl. in Opp., Ex. ("Pl. Ex.") 18 at 29; see also Pl. 56.1 Counterstatement ¶ 7.)[2]

## B. Plaintiff's Job Performance

Ruszczyk's first observation report, on July 15, 2006, noted that Plaintiff had been late three times and failed to "punch out." (Def. 56.1 Stmt. ¶ 18.) Ruszczyk's first observation report stated that he had talked with Plaintiff about his being late and told Plaintiff that "it could not happen again." (Id. ¶ 19.) In Ruszczyk's second observation report, on July 19, 2006, Ruszczyk noted that Plaintiff had been late a total of five times. (Id. ¶ 20.) Ruzsczyk made these observations by reviewing Plaintiff's time-clock records and Plaintiff does not dispute that he failed to clock in on time. (Id. ¶ 21.) Plaintiff, however, contends that he was not in fact late. (Pl. 56.1 Counterstatement ¶ 23.) Ruzscsyk's second observation report outlined a number of problems Ruszczyk observed in Plaintiff's performance:

> Late a total of five times, after we had a serious talk about it. Excuse was unacceptable: it took him a long time to find a parking spot. He has also forgotten to punch out VERY frequently. See also my first Field FA observations. [The Cooperating Teacher] a 27 year veteran and in my opinion a great teacher, reports that [Plaintiff] fell asleep on the first day asked if the computer worked on the first day and the following day brought in his laptop to the classroom and did his homework . . . during class. He has left class more than once to put quarters in

---

[2] Defendants Response to Plaintiff's Rule 56.1 Counterstatement, denies almost all of the Plaintiff's statements of undisputed fact without providing any explanation for the denial. Rather, Defendants "respectfully" refer the court to pages of transcripts which often confirm the very fact that Plaintiff stated as undisputed. Defendants' conduct is neither respectful of this court's time nor within the spirit of Local Civil Rule 56.1.

3

> the meter. . . . His lesson today which I observed . . . was not well prepared. . . . The [Cooperating Teacher] said [Plaintiff] was originally supposed to teach all day . . . until he lost his lesson plans, came in late, and then was unprepared. . . . In a 5th grade [] classroom, there was no awareness of any knowledge of students' present level of learning. . . . Beyond these observable things, I share the [Cooperating Teacher's] fear of having [Plaintiff] responsible for a classroom of children. He is not comfortable with students.

(Def. 56.1 Stmt. ¶ 27.)

On July 24, 2006, Plaintiff informed Ruszczyk that he did not register and take the required Content Specialty Test ("CST") in time for the test to be completed before the beginning of the 2006-2007 school year. (Id. ¶ 31.) Teaching Fellows are required to pass the CST "before the beginning of the 2006-2007 school year" in order to remain in the TFP. (Id. ¶ 7.)

On July 31, 2006, at the end of the TFP, Site Supervisor Edison evaluated all eight teaching fellows she supervised. (Id. ¶ 34.) Plaintiff received a mark of "concern" under every evaluation criteria. (Id. ¶ 35.) The evaluation also stated that "[w]ith one exception our interns were an exceptional group – eager to learn and helpful to their cooperating teachers. Mr. Benn appeared to have difficulty with organization and preparation activities and did not take direction well. In addition, his time card indicated irregularities." (Id. ¶ 35.) Every other Teaching Fellow at P.S. 104 received a satisfactory review except Plaintiff. (Id. ¶ 35; Pl. Ex. 8.)

In a September 5, 2006 letter, however, Plaintiff's second cooperating teacher, wrote that Benn had "positive rapport with the students" and that "[o]verall, it is [her]

4

professional opinion that Mr. Benn's performance was quite satisfactory in his role as a Teaching Fellow." (Pl. Ex. 11; See also Pl. 56.1 Counterstatement ¶ 38.)[3]

### C. Plaintiff's Termination

In a letter dated August 10, 2006, Vicki Bernstein, Director of Alternative Certification for DOE, notified Plaintiff of his termination from the TFP. (Def. 56.1 Stmt. ¶ 38.) The letter stated that Plaintiff was being removed from the program for the following reasons: Plaintiff, did not meet the requirement of demonstrating satisfactory performance in his summer field placement; Plaintiff failed in "maintaining professional conduct becoming of a student and a teacher"; and Plaintiff failed to pass both required New York State Certification Exams before "the beginning of the 2006-2007 school year," in order to maintain good standing. (Id. ¶ 39.) When Bernstein decided to terminate Plaintiff, Bernstein was not aware of Plaintiff's race, age, or national origin. (Id. ¶ 42.) Further, Ruszcsyk's input to Bernstein "was not the sole basis of [] Bernstein's decision to terminate [P]laintiff." (Id. ¶ 43.) Bernstein also received input on Plaintiff's performance from other individuals, including other supervisors. (Id. ¶ 44.)

### D. Plaintiff's Allegations of Discrimination

Plaintiff's allegations of discrimination are limited to a few isolated incidents. All of Plaintiff's allegations of discrimination deal with the actions taken by, and statements made by, Ruszczyk, Plaintiff's FFA, and McCarthy, Plaintiff's first cooperating teacher. Plaintiff states in his Rule 56.1 statement that his belief that he was discriminated against is based on,

---

[3] Defendants inexplicably deny this fact in their 56.1 statement even though Plaintiff's Exhibit 11, to which the Defendants refer the court, confirms Plaintiff's assertion. In this denial, among others, Defendants' response makes no attempt to explain the grounds for denying Plaintiff's statement of undisputed fact.

5

> 1) Ruszczyk and McCarthy mocking [P]laintiff's accent; 2) Ruszczyk calling [P]laintiff's home at 10:00pm and directing his wife to wake him, something he never did to any other Fellows; 3) . . . the City of New York's reacting to [Plaintiff's] complaint, deeming it unprofessional, and terminating him from the program shortly thereafter."

(Pl. 56.1 Stmt. ¶ 48.) While Plaintiff cited a few additional incidents during his deposition, the evidence of overt discrimination is minimal.

### 1. Discrimination on the Basis of Race

Much of Plaintiff's allegations of discrimination focus on an incident on July 19, 2006, when Ruszczyk called Plaintiff at his home at 9:53 p.m. and spoke to Plaintiff for forty minutes. (Pl. 56.1 Counterstatement ¶ 18.) Ruszczyk called Plaintiff to discuss the allegations that Plaintiff had arrived late and other allegations about Plaintiff's unprofessional performance in class. (See, e.g., Pl. Ex. 18 at 54.) Plaintiff alleges that during this phone call "Ruszczyk was abusive, condescending and complained about plaintiff using a computer in the classroom," (Def. 56.1 Stmt. ¶ 46) but "[P]laintiff concedes that Defendant Ruszczyk did not mention age or race during the conversation," (Id. ¶ 47). During the phone call Plaintiff notified Ruszczyk that he "needed to get sleep and had to get off the phone, but Ruszczyk refused to hang up." (Pl. 56.1 Counterstatement ¶ 23.) Plaintiff alleges that he "found the late hour that Ruszczyk called his home, as well as the manner in which he spoke to plaintiff's wife and spoke to plaintiff to be racially motivated." (Id.) When asked if anything led Plaintiff to believe that Ruszczyk's conduct was rationally motivated, Plaintiff said that he formed his belief because Plaintiff did not speak to any of the other Teaching Fellows in "that tone of voice or in that condescending manner." (Pl. Ex. 18 at 56.) It is disputed whether Ruszczyk

6

ever called another Teaching Fellow as late as he called Plaintiff. (Pl. 56.1 Counterstatement ¶ 22.)

Plaintiff also argues that "McCarthy's question why he wanted to be a teacher was racially motivated." (Id. ¶ 40.) Plaintiff asserts that McCarthy asked who recommended him to the teaching fellows program and that it "implied" that he did not "really belong here." (Id. ¶ 66.)

### 2. Discrimination on the Basis of National Origin

Plaintiff also alleges that he was discriminated against on the basis of national origin because McCarthy and Ruszczyk asked Plaintiff where he was from at least once. (Pl. Ex. 18 at 69; Pl. 56.1 Counterstatement ¶ 41.) Ruszczyk asked Plaintiff where he was from and said that he was asking because Plaintiff had an accent and Ruszczyk could not understand him. (Pl. Ex. 18 at 69-70.) Though it is in dispute, Plaintiff alleges that during observations of his teaching, McCarthy and Ruszczyk mocked Plaintiff's accent. (Pl. 56.1 Counterstatement ¶ 14.) Plaintiff asserts that while he was teaching the classroom, Ruszczyk and McCarthy sat in the classroom "laughing at" his accent and "making a mock of what was being said." (Pl. Ex. 18 at 35.) Plaintiff alleges that this mocking occurred on approximately five times. (Pl. 56.1 Counterstatement ¶ 65.) Plaintiff further alleges that when he was teaching, McCarthy interrupted Plaintiff two or three times to correct his pronunciation of particular words, which caused Ruszczyk to laugh. (Pl. Ex. 18 at 43-4.) Plaintiff also alleges that McCarthy and Ruszczyk had trouble understanding him, and would ask Plaintiff what he said. (Pl. Ex. 18 at 45.)

Plaintiff also alleges that Ruszczyk asked Plaintiff about attending University abroad and asked about Plaintiff's "level of education" and whether Plaintiff "had to do

7

back courses or something like that over here" which plaintiff said "[i]mpli[ed] that, well, the standard of [my] education is not that high." (Pl. Ex. 18 at 81.) Plaintiff admits, however, that he did in fact repeat some classes here, though he is not certain whether or not he needed to. (Pl. Ex. 18 at 82.)

### 3. Discrimination on the Basis of Age

Plaintiff, who was 49 years old at the time of his termination, alleges that he was discriminated against on the basis of his age and cites as proof the fact that "Ruszczyk asked [P]laintiff his age and Ruszczyk mentioned that the other Teaching Fellows were of a younger age bracket than [P]laintiff." (Pl. 56.1 Counterstatement ¶ 43.) Plaintiff alleges that McCarthy made a demeaning comment about his age when McCarthy said to the students that she studied teaching and became a teacher while Plaintiff "did other things and now he is coming into the teaching profession." (Id. ¶ 73.)

### 4. Retaliation

Plaintiff alleges that he was retaliated against because he told Ruszczyk that McCarthy was not giving him adequate teaching opportunities. (Pl. Ex. 18 at 57, 108-09.) Plaintiff testified that he told Ruszczyk about his lack of teaching opportunities. (Id.)

## II. LEGAL STANDARD

A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing the absence of any genuine dispute as to a material fact rests on

8

the party seeking summary judgment. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

A fact is material if its existence or non-existence "might affect the outcome of the suit under the governing law," and an issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the [non-moving] party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, "the court must draw all reasonable inferences in favor of the nonmoving party." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000).

Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. A grant of summary judgment is proper "when no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight." Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994).

## III. DISCUSSION

### A. Discrimination on the Basis of Race, National Origin, and Age

The ADEA and Title VII set forth parallel requirements for a plaintiff to establish a claim of discrimination and retaliation. See Nieves v. Angelo, Gordon, & Co., 341 F. App'x 676, 679 (2d Cir. July 6, 2009) (recognizing that "[t]he same standards and burdens apply to claims under both Title VII and the ADEA" with respect to retaliation claims). The same standards for

discrimination claims also apply to claims under 42 U.S.C. §1981 and New York State Law. See Fullwood v. Ass'n for the Help of Retarded Children, Inc., 08-CV-6739 (DAB) 2010 WL 3910429, at *5 (S.D.N.Y. September 28, 2010); Dixon v. International Federation of Accountants, 09-CV-2839 (HB) 2010 WL 1424007, at * 3 (S.D.N.Y. April 09, 2010).

The court analyzes these claims under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) (extending McDonnell Douglas burden-shifting analysis to the ADEA); Dixon, 2010 WL 1424007, at *3. First, a plaintiff must establish a prima facie case of discrimination. Next, the burden shifts to the defendant to offer a legitimate, non-discriminatory rationale for its actions. McDonnell Douglas, 411 U.S. at 802. Should the defendant offer a neutral explanation for its actions, a plaintiff may defeat summary judgment by offering evidence sufficient to show that the proffered neutral explanation was a pretext for discrimination. Id. at 804.

To establish a *prima facie* case of discrimination, a plaintiff must demonstrate that: 1) he belonged to a protected class; 2) he was qualified for the position; 3) he was subjected to an adverse employment action; and 4) the adverse action occurred under circumstances giving rise to an inference of discrimination. See Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003). Similarly, a plaintiff establishes a *prima facie* case of retaliation by showing that "(1) [he] participated in a protected activity, (2) the defendant knew of the protected activity; (3) [he] experienced an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action." Nieves, 341 F. App'x at 679.

### 1. Job Performance

To establish a prima facie case of employment discrimination, a plaintiff must prove that his job performance was satisfactory. See Thornley v. Penton Publishing, 104 F.3d 26, 29 (2d Cir. 1997). "Whether job performance was satisfactory depends on the employer's criteria for the performance of the job—not the standards that may seem reasonable to the jury or judge." Id. A recent Second Circuit case, Valtchev v. City of New York, 09-4145-CV, 2010 WL 4595539, at *4 (2d Cir. 2010) (summary order), which also deals with the termination of teacher, is instructive. In that case the Court found that two potentially discriminatory comments about quality of the plaintiff's English and teaching methods—because he had been educated in a different country—did not give rise to the inference of discriminatory animus required to satisfy a *prima facie* case. Valtchev, 2010 WL 4595539, at *4. The Court found that the evaluations of his teaching performance "provide detailed accounts of deficiencies in [his] classes, including difficulty with teaching to the level of his special needs students, developing a topic thoroughly, and incorporating activities into his lesson plan, all of which provide an independent basis for the 'unsatisfactory' markings." Id. Because of these teaching evaluations, the Circuit concluded that,

> [t]he record does not contain sufficient evidence for a rational trier of fact to find that [the plaintiff] established the fourth element of the prima facie case, principally that the adverse employment action took place under circumstances giving rise to an inference of discrimination. The allegedly adverse employment actions have an entirely independent basis, principally, [the plaintiff's] deficient teaching performance.

Valtchev, 2010 WL 4595539, at *4.

Plaintiff, similarly, has failed to establish that his job performance was satisfactory such that the circumstances surrounding his termination give rise to the inference of discrimination. First, it is undisputed that Plaintiff failed to take the mandatory CST test in time for the test to be

11

complete before the beginning of the 2006-2007 school year, as is required in order to remain in good standing and be placed in a teaching position in the TFP. (Def. 56.1 Stmt. ¶ 7.) Plaintiff has offered no proof that passing the CST was not in fact a requirement of maintaining good standing in the TFP or a requirement in order to be placed in a teaching position. Rather, Plaintiff has only shown that at least in some cases, "[t]hose who do not pass both of those exams who successfully complete the pre-service training are given up until February to reinstate if they subsequently pass the exam, get a position and can be re-admitted into the university program." (Pl. Ex. 19 at 13-14.) Showing that under certain circumstances Plaintiff could have possibly been *reinstated* in the TFP does not show that Plaintiff's failure to take the CST was not sufficient grounds for *removal* from the TFP, and nothing shows that Plaintiff sought reinstatement.

Furthermore, Plaintiff's time cards indicated that he punched in late on at least five occasions. (Def. 56.1 Stmt. ¶¶ 18, 20.) Ruszczyk warned plaintiff that his being late "could not happen again," but Plaintiff signed in late on at least two more occasions after he was warned. (Id. ¶ 19.) Plaintiff has indicated that, at least on some occasions, he had forgotten to punch in on the time sheet, rather than arriving late. But Plaintiff has provided no evidence that Ruszczyk in fact knew that Plaintiff had arrived on time or that it would have been unreasonable for Ruszczyk to rely on the time clock in determining Plaintiff's tardiness. Furthermore, Plaintiff has offered no evidence of any other Teaching Fellow clocking in late as many times as he did.

In addition to documenting Plaintiff's repeated clocking in late, performance reviews conducted by both Ruszczyk and site supervisor Edison documented serious and specific concerns with Plaintiff's performance teaching and with his ability to follow instructions from his supervisors. (See Def. 56.1 Stmt. ¶ 35.) In light of the undisputed fact that Plaintiff failed to

take the mandatory CST and clocked in late despite warnings from his supervisors, further compounded by the detailed reports of Plaintiff's deficient performance as a student teacher, his limited allegations of discriminatory conduct are insufficient to give rise to an inference of discrimination. Consequently, Plaintiff has failed to establish a *prima facie* case of employment discrimination or of retaliation and summary judgment must be entered for the Defendants.

2.  Plaintiff's Burden of Establishing Pretext

Even if we presume, *arguendo*, that Plaintiff has met his *prima facia* burden, because Defendants have proffered a neutral justification for Plaintiff's termination—that he failed to meet the program requirements—"the burden shifts back to the plaintiff to demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004) (internal quotation marks omitted). "[A] plaintiff must show that there is a material issue of fact as to whether (1) the employer's asserted reason for discharge is false or unworthy of belief *and* (2) more likely than not [a discriminatory motive] was the real reason for the discharge." Schnabel v. Abramson, 232 F.3d 83, 88-89 (2d Cir. 2000) (emphasis in original).

"[A] plaintiff must provide more than conclusory allegations to resist a motion for summary judgment" in a discrimination action. Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008); Martin v. MTA Bridges & Tunnels, 610 F.Supp.2d 238, 251 (S.D.N.Y. 2009) (plaintiff's "belief" that an action was motivated by discrimination is not sufficient to raise a genuine issue of fact). This showing must be made "either through direct, statistical or circumstantial evidence." Gallo v. Prudential Residential Serv., Ltd., 22 F.3d 1219, 1225 (2d Cir. 1994).[4] Showing that a discriminatory reason motivated the employer requires showing that

---

[4] Under the ADEA, plaintiffs bear a greater burden of persuasion at this stage on ADEA claims, in contrast to Title VII claims. To establish liability under the ADEA, a "plaintiff must prove by a preponderance of the evidence

13

"the evidence in plaintiff's favor, when viewed in the light most favorable to the plaintiff, is sufficient to sustain a reasonable finding that [his] dismissal was motivated at least in part by . . . discrimination." Tomassi v. Insignia Financial Group, Inc., 478 F.3d 111, 115 (2d Cir. 2007).

The "more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." Tomassi, 478 F.3d at 115. "The more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be." Id. at 115 n.3. "The relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class." Id. at 116.

Plaintiff has failed to meet his burden of showing that there is a material issue of fact as to whether "the employer's asserted reason for discharge is false or unworthy of belief." Schnabel, 232 F.3d at 88-89. To begin, Plaintiff has failed to rebut the claim that he was terminated because he did not have satisfactory performance. First, as addressed above, it is undisputed that Plaintiff failed to take the CST test which is required to maintain good standing and to be placed in a teaching position. The only issue remaining is whether Plaintiff was entitled to have a position in the program held open until the next semester in the event that he met all other requirements of the program. Defendants have provided a non-discriminatory explanation for why Plaintiff would not have been eligible to be reinstated, however, by asserting that he did not otherwise perform satisfactorily in the TFP.

Second, Plaintiff has offered no evidence to show that Defendants' reviews of Plaintiff's poor performance were not in fact the cause of his being terminated from the TFP. As addressed

---

(which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." Gross v. FBL Fin. Servs., Inc., 129 S.Ct. 2343, 2351 (2009).

above, Plaintiff's clocking-in late was well documented. (Def. 56.1 Stmt. ¶¶ 18, 20.) Plaintiff has provided no evidence that Ruszczyk or anyone else supervising Plaintiff did not in fact believe that Plaintiff had repeatedly arrived late, nor has Plaintiff presented facts showing that it was unreasonable for his supervisors to rely upon the time records in determining if he had arrived late. Finally, Plaintiff has offered no evidence of any other fellow clocking in late as many times as he did, from which an inference of disparate treatment could be made.

Plaintiff has also offered insufficient evidence from which to rebut his supervisors' repeated and detailed negative performance reviews. The only evidence Plaintiff has produced to demonstrate good teaching performance is a review from another supervising teacher who observed Plaintiff's performance at a different time and in a different setting. (Pl. Ex. 11.) This evidence that Plaintiff performed well in one teaching setting does little to rebut his documented poor performance at other times during the TFP. Consequently, Plaintiff has failed to offer sufficient evidence from which a reasonable trier of fact could conclude that Defendants' non-discriminatory reasons for Plaintiff's termination were false. Consequently, Plaintiff has failed to meet his burden, and summary judgment must be granted in favor of the Defendants.

### B. Hostile Work Environment

To make out a hostile work environment claim, a plaintiff must show that his workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." Brennan v. Metropolitan Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)). A plaintiff "must show not only that [he] subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006). A plaintiff must also show that the relevant conduct

occurred because of her membership in a protected class. Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002).

To survive a motion for summary judgment on a hostile work environment claim, a plaintiff must demonstrate evidence: "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his or her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003) (internal quotation marks and punctuation omitted).

Title VII and the anti-discrimination laws set forth here do not impose "a general civility code for the American workplace." Burlington Northern, 548 U.S. at 68 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80, (1998)). "[I]solated or episodic incidents involving racial slurs or other discriminatory conduct . . . do[ ] not rise to the level of severity or pervasiveness needed to support a hostile work environment claim." Smith v. New Venture Gear, Inc., 319 F. App'x 52, 56 (2d Cir. 2009). "For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (internal quotation marks and citations omitted).

The court considers whether the incidents, as alleged by Plaintiff, were sufficiently severe and pervasive to create a genuine issue of material fact with respect to Plaintiff's hostile work environment claim. See Alfano, 294 F.3d at 374. Relevant factors in this determination include (1) the frequency of the discriminatory conduct, (2) its severity, (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance, (4) whether the conduct

unreasonably interfered with the plaintiff's work, and (5) what psychological harm, if any, resulted. Harris, 510 U.S. at 23; see also Patterson v. County of Oneida, 375 F.3d 206, 227 (2d Cir. 2004). "[A] plaintiff alleging a hostile work environment must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." Alfano, 294 F.3d at 374.

Plaintiff has failed to offer sufficient evidence to demonstrate that the Defendants' conduct was objectively hostile and abusive enough to constitute an "intolerable alteration" of his working conditions so that it substantially interferes with his ability to perform her job. See Mathirampuzha v. Potter, 548 F.3d 70, 79 (2d Cir. 2008). No one incident was "extraordinarily severe," as is required to create a hostile work environment on its own. Furthermore, the alleged incidents—laughing at and correcting Plaintiff's accent, questioning Plaintiff about his education, commenting vaguely about his age, and talking to him in an allegedly condescending manner—occurred in a few isolated incidents, and thus were only episodic. Because they were episodic rather than continuous, a hostile work environment cannot be established. See Alfano, 294 F.3d at 374 ("As a general rule, incidents must be more than 'episodic;' they must be sufficiently continuous and concerted in order to be deemed pervasive.").

Accordingly, Defendants' motion for summary judgment on Plaintiff's hostile work environment claim is granted.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
      February 2*, 2011

      s/Nicholas Garaufis
      NICHOLAS G. GARAUFIS
      United States District Judge